IN THE UNITED STATES DISCRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

<table>
<tr><td>

**THREASA JONES**

Plaintiff,

V.

**DERRICK BLASINGAME**, individually and In his official capacity as Olympia Fields Chief of Police, **PORTIA SIMPSON**, Individually and in her Official Capacity as Detective of Olympia Fields Police Department, **BOLDEN JONES**, individually And in his official capacity as Deputy Chief Of Olympia Fields Police Department, **JACOB RENEAU**, Individually and in her Official Capacity as Detective of Olympia Fields Police Department, **TRUSHANA WHITTY,** Individually and in her Official Capacity as Officer of Olympia Fields Police Department, **MIKASAS WATERS**, Individually and in his Official Capacity as Officer of Olympia Fields Police Department, **MICHAEL SMITH**, Individually and in his Official Capacity as Officer of Olympia Fields Police Department, **BOLDEN JONES**, Individually and in his Official Capacity as Officer of Olympia Fields Police Department, **POTIA SIMPSON**, Individually and in her Official Capacity as Officer of Olympia Fields Police Department, **DAVID POINDEXTER** individually and in his Official capacity as Officer of Olympia Fields Police Department and **AARON BAKER,** individually and in his Official Capacity as Officer of Olympia Fields Police Department **and TANJA YOUNG**

Defendants

</td><td>

CASE NO. 26-cv-
HONORABLE JUDGE:
MAGISTRATE JUDGE

JURY TRIAL DEMANDED
$10,000,000.00 in compensatory Damages and $10,000,000 in Punitive Damages

</td></tr>
</table>

## COMPLAINT

NOW COMES Plaintiff, **THEREASA JONES**, by and through her attorneys, David E. Neely & Associates, and respectfully allege:

## NATURE OF THE ACTION

1. This is a federal Civil Rights Action under 42 U.S.C. § 1983 seeking money damages for violations of Plaintiff's constitutional rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution and supplemental claims of Intentional Infliction of Extreme Emotional Distress and Fraudulent Concealment under the laws of the State of Illinois.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over Plaintiff's States claims pursuant to 28 U.S.C. §1367;

3. Venue is proper because all the claims arose in the Northern District of Illinois, Eastern Division;

## THE PARTIES

1. Plaintiff Theresa Jones is a 43 year old African American female and a 100% disabled retired Air Force Veteran who suffers from diabetes, PTSD, MST, panic attacks, sever anxiety attacks, night terror, border-line psychosis and scream vomiting if she were left alone in the cell;

2. Prior to the incidents alleged herein, Plaintiff had never been arrested and limited to no contact with defendants;

3. Defendant Tanja Young, is the wife of Sammy Young, a retired Cook County Sheriff Deputy and is adult neighborhood bully and she and her husband have a

documented history, pattern and practice of intentionally, maliciously and recklessly using their influence with local police and local government officials to engage in personal vendettas against neighbors they don't like and children who play in the neighborhood. See Sandra Alvardo v. Sammie Young et.al, 15-cv-3163, NDIL, Eastern Division and Emmett J. Lynch & Tara Lynch v. Sammy Young et.al., 04-cv-5136, NDIL, Eastern Division;

4. In the both cases cited in the preceding paragraph, a jury found them guilty of harassing their neighbors and intentionally inflicting extreme emotional distress;

5. Defendant Tanja Young frequently walks her neighborhood wearing a Cook County Sheriff's Police t-shirt and brags about how she can get the police to "get you";

6. Defendant Young intentionally, recklessly, maliciously makes false 911 calls to The Olympia Fields Police Department as a way to control small children playing in her neighborhood, riding their bicycles near in the subdivision(e.g. an an area that has no sidewalks) and to harass her neighbors like Plaintiff;

7. All of the Police Officers alleged herein are sued in their individual and official capacities as employees of the Olympia Fields Police Department while acting under color of law. They are **DERRICK BLASINGAME**, Olympia Fields Chief of Police, **BOLDEN JONES**, Deputy Chief of Police, **PORTIA SIMPSON, Detective, JACOB RENEAU**, Detective, **TRUSHANA WHITTY,** Officer, **MIKASAS WATERS**, Officer, **MICHAEL SMITH**, Sergeant,, and **POTIA SIMPSON**, Officer, Officer **DAVID POINDEXTER**, and Officer **AARON BAKER;**

## STATEMENT OF FACTS

8. This case arose because defendant Tanja Young used her influence with the Olympia Fields Police Department to control children playing near her home (e/g. riding their bikes near her grass) and to harass Plaintiff because many children come to her home play with her son;

9. Olympia Fields Police respond to all of defendant Young's frivolous 911 calls, regularly park in her driveway and began harassing Plaintiff by instructing her to keep children awy from the Young's grass and away from the Young's home;

10. Plaintiff Theresa Jones had limited contact with defendant Young, spoke to defendant Young once in 2021 when the Young's came to her home to solicit her vote for the HOA Board election and once in 2026 when Mr. Young came to her home to report Plaintiff's son riding his bike in the streets near their home;

11. When Mr. Young came to Plaintiff Jones home, he made unwelcomed and unwanted sexual advancements toward her, but she refused his advances and never told defendant Young about the situation;

12. The second and only other conversation Plaintiff Theresa Jones had contact with defendant Young was after Mr. Jones visited her home, but they only discussed neighborhood issues but nevertheless, Plaintiff and her son were on the Young's radar and became targets of bulling;

13. Because the defendant Young's did not want children riding bikes close to their home or onto their grass, she placed yellow cones in the middle of the street to block

children from riding on her side of the public street and forcing them to ride into oncoming traffic.

14. For some unexplained reason, Defendant Young called 911 and intentionally, maliciously,  recklessly and falsely told Olympia Fields Police that Plaintiff Jones owned and operated an "illegal bike";

15. On July 2, 2026 , Deputy Chief Jones investigated defendant Young's false claim by going to Plaintiff's home at approximately 11:50 a.m. to inspect her bicycle;

16. Deputy Chief Jones inspected Plaintiff's bike and concluded the claim was false;

17. Plaintiff Jones made several earlier attempts to seek assistance from the Olympia Fields Police Department and from Olympia Fields Village officials to stop defendant Young reckless and malicious conduct before the situation escalated, but to no avail;

**<u>On June 27, 2026, Plaintiff Jones Uses First Amendment Protected Speech to Confront Olympia Fields Police Chief Derrick Blasingame</u>**

18. On June 27, 2026, defendant Young made another false police complaint to the Olympia Fields Police claiming Plaintiff's child was riding a scooter near her house;

19. Although the child was not related to Plaintiff Jones and although Plaintiff's 10 year old son had not gone outside to play that day, Olympia Field's Police Officer Horde came to Plaintiff's home to investigate and confront her about the frivolous complaint made by defendant Young;

20. During that police interaction, Officer Horde identified defendant Young as the person who called 911 to reach the Olympia Field's Police.

21. During that conversation, Officer Horde told Plaintiff that defendant Young's husband, Sammy Young, said he almost hit Plaintiff's son in the streets while driving and defendant Young said she was calling the police out of concern for the children's safety;

22. The allegations made in the previous paragraph were intentional, false, malicious, outrageous, frivolous and reckless.

23. Plaintiff Jones felt that Sammy Young made the false statements to police because she rejected his unwanted sexual advances;

24. On June 27th and June 28th, Plaintiff contacted the Olympia Fields Police Chief regarding the intentional, malicious, reckless and frivolous 911 calls by defendant Young;

25. On June 28th, Olympia Fields Police Officer Horde came to Plaintiff's home and warned Plaintiff Jones that if her children were bothering defendant Young, she should keep them away from that area;

26. Officer Horde told Plaintiff that her children could not ride their bicycles in the streets and that defendant Young was speaking with all of the parents in the neighborhood, not just Plaintiff, which was untrue;

27. Because Plaintiff believed defendant Young was repeatedly using 911 and the Olympia Fields Police as her "Grass Patrol", she decided to go to the Olympia Fields Police Department on June 30th and speak directly with Chief Derrick Blasingame about the frivolous, intentional, reckless and malicious use of 911 by defendant Young;

28. On June 30, 2026 , Plaintiff went to the Olympia Fields Police Department and as she was speaking with Officer Waters, Plaintiff observed Chief Blasingame speaking with a woman who came into the Police Station after Plaintiff, and she felt that Chief Blasingame was ignoring her;

29. When Plaintiff Jones asked why Chief Blasingame could speak to other people but not her, he began yelling at her to "*sit down and be quiet*", and that she was "*on his time*" and that he would "*deal with her when he was ready*".

30. Plaintiff told Chief Blasingame that he was "*on her time*" because she is a resident of Olympia Fields" and that it was not "an appropriate the way to speak to residents".

31. Plaintiff told the Chief Blasingame that he was "playing favoritism" and that she "did not appreciate the way he was talking to her".

32. The Chief took Plaintiff into an interrogation room, stood over her with his arms crossed and yelled three times "What do you need? What do you need? What do you need?"

33. Plaintiff Jones also stood up and crossed her arms and Chief Blasingame said "are you trying to intimidate me", "Is that what you're doing?", and Plaintiff replied "Is that what that means (e.g. standing over someone with your arms crossed?), and he replied "Who do you think you are?";

34. Plaintiff Jones told Chief Blasingame that she was a "disabled veteran" and resident of Olympia Fields and he said "Well, I can't help you.";

35. Plaintiff sat down and said, "Get the mayor.";

36. Officer Waters was standing in the doorway and he and Chief Blasingame began laughing at Plaintiff, pointing at her and said "Who do she think she is?" .."Who is this woman?"

37. After things eventually calmed down, Chief Blasingame and Plaintiff had a conversation and Plaintiff complained that defendant Young was making repeated, frivolous, malicious, reckless and intentional 911 calls to Olympia Fields Police and they were responding each time;

38. Plaintiff complained that defendant Young was targeting her and her children;

39. Although Chief Blasingame told Plaintiff that she had "nothing to worry about" Plaintiff followed-up with written email to complaints to Chief Blasingame and other Village officials; as well as complaints to Kevin Oliver, Deputy Chief Jones, HOA President, Steve Hinton, and Board member Victor Blackwell about her interaction with Chief Blasingame, leaving Plaintiff with the impression that someone would request an investigation;

40. After Plaintiff sent emails complaining about Chief Blasingame, she received a recorded visit at her home from Corporal Chivon Dugan about children riding bicycles;

**Defendant Tanja Young Intentionally, Recklessly and Maliciously Filed a Frivolous and False Emergency No Contact Order of Protection Against Plaintiff Jones**

41. On July 28, 2026 at approximately 4pm, Tanja Young intentionally, recklessly and maliciously filed a frivolous and No Contact Stalking Order of Protection against Plaintiff Theresa Jones.

42. The complaint falsely alleges that: a) Theresa Jones 10 year old son and his friend

destroyed the reflectors on her bike, b) rode their bikes onto her lawn and almost ran her over; d) Threw garbage in her yard; e) Cursed her out; f) and she falsely alleged that Plaintiff came to her house with other people and videotaped her, intimidated her and wanted to fight me;

43. Plaintiff Jones has never been to defendant Young's home;

44. On July 29, 2026 at approximately 6:25 Pm, Plaintiff Jones was served with the Emergency No Stalking, No Contact Order of Protection (EOP), prohibiting her from being within 1000 feet of the Young's Home;

45. What the Circuit Court was not told is that Plaintiff Jones' Home located at 20860 Greenwood Drive, Olympia Fields, Illinois 60461 is within 100 feet of Tanja Young's home located at 20801 Thornwood Dr., Olympia Field Illinois 60461;

46. What the Court was not told is that defendant Young's home located at 20801 Thornwood Dr., Olympia Field Illinois 60461 is on the Corner of Woodlawn Dr., Thornwood Dr. and Greenwood Dr. and that it is physically impossible for Plaintiff Jones to be in her property without violating the 1000 feet barrier because the properties are less than 1000 feet apart;

47. What the Court was not told is that defendant Young called Olympia Fields Police around 2pm on July 29, 2026 (before Theresa Jones had been served with the Order of Protection at 6:25 pm) falsely claiming that Plaintiff Jones was driving by her home in a car.

48. Between 2pm and 3pm, Olympia Fields Police surrounded Plaintiff Jones home but discovered she was not there;

49. On or about 8pm on July 29, 2026, defendant Young again called 911 Olympia Fields Police and recklessly, maliciously, and falsely claimed that Plaintiff Jones drove by her home on a bicycle and that she had video evidence;

50. Olympia Fields Police came to the Young's home and, upon review of the alleged video footage evidence presented by defendant Young, Olympia Fields Police *Officer Reneau,* determined that the allegation was false and that Plaintiff Jones was not in the footage;

**Olympia Fields Police Officer Reneau Investigates Plaintiff Jones**

51. On July 29, 2026 during the early evening, Olympia Fields Police *Officer Reneau came to Plaintiff Jones* home to investigate defendant Young's allegations and talked to Plaintiff on the outside of her garage which is connected to her home*;*

52. Olympia Fields Police Officer Reneau verified her name and said he was investigating a complaint by defendant Young;

53. Officer Reneau asked Plaintiff what had happened down the street earlier and Plaintiff explained that she was just helping a neighbor cut down a tree and drain his basement because his sump pump had failed;

54. Officer Reneau told Plaintiff that defendant Young was alleging that Plaintiff had violated the EOP by driving past her house immediately after being served;

55. Plaintiff said that was impossible because she had not left her home after being served at approximately 6:25 p.m;

**Olympia Fields Police Officer Reneau Was Put on Subjective Notice of Plaintiff's Risk of Panic Attacks if She Became Extremely Upset and Agitated**

56. Plaintiff became very upset and had a panic attack after learning she had again been falsely accused by defendant Young and Plaintiff began throwing her property around the garage;

57. Plaintiff's neighbor, who recorded the encounter looked shocked as well as Olympia Fields Police Officer Reneau;

58. The neighbor advised Officer Reneau that Plaintiff had a medical condition, took medication for her condition and admitted she had not left her home and had never seen Plaintiff act in that way;

59. Plaintiff told Officer Reneau that defendant Young was repeatedly calling the police and intentionally harassing her by making reckless and maliciously false allegations against her;

60. Plaintiff calmed down and apologized to the Officer Reneau for her conduct and advised him that she suffered panic attacks when she became agitated;

61. The Officer replied that it was her property that she was destroying and that he could not arrest her for destroying her own property.

62. During this police encounter, Olympic Fields Police Officer Reneau became subjectively aware that Plaintiff faced a risk of harm of panic attacks if she became extremely agitated and upset.

**<u>Olympia Fields Police Officer</u>** <u>Reneau</u> **<u>Instructions to Plaintiff to Drive-By But Don't Stop</u>**

63. Plaintiff asked the Officer Reneau if she was permitted to drive past the Young's home in order to leave and return to the neighborhood and the Officer Reneau said "yes", just don't stop.

64. At various times during that day, defendant Young was observed recording children who rode their bicycles pass her house;

65. The children who were playing with Plaintiff son went home at approximately 8:05–8:20 p.m. that evening and Plaintiff told Officer Reneau that she had to run some errands.

**<u>Olympia Fields Police Officer Reneau Gets on Police Radio and Says "Step-It-Up</u>**

66. As Plaintiff Jones walked toward her car she overheard Officer Reneau get on his radio and say, "Step it up", but she did not know what he meant.
67. Plaintiff Jones believed he was talking about her but was not sure;
68. On July 29, 2026 at approximately 8:35 pm Plaintiff left her home to run some errands and police cars were still parked at defendant Youngs house.;
69. At approximately 9:00 pm, while Plaintiff Jones was returning from running errands she passed Tanja Young's home as she normally do and noticed about five to six Olympia Fields Police cars were still parked outside of the Young's home;
70. Plaintiff turned around and drove to the Olympia Fields Police Department to find out if defendant Young had filed another false police report against her, she knocked on the front door and rang the doorbell to the Police Department, but no one answered

and after circling the Olympia Fields Police Department several times, Plaintiff drove down Governors Highway heading back home again.

71. Upon pulling into her driveway, several Olympia Fields squad cars pulled up to Plaintiff's home, made a U-turn and drove back towards the Young's house.

**First Unreasonable Seizure: No Probable Cause-No Official Charges-No Procedural or Substantive Due Process**

72. As Plaintiff existed her vehicle, Olympia Fields Police came back to her home;

73. Plaintiff Jones said "Am I Under Arrest" and Officer Poindexter answered, "Yes, ma'am.".

74. Plaintiff asked "For What"? and Officer Poindexter answered "For driving past us just now.";

75. Plaintiff became confused because Officer Reneau advised her that she could drive by the Young's home on her  way to her house, but could not stop;

76. Plaintiff advised Olympia Fields Police Officers that she was suffering from various medical conditions for which she took prescribed medication and asked Police to escort her into her home to get her medication;

77. Officer Reanau and Officer Whitty escorted Plaintiff into her house and Plaintiff explained that she was getting her medication for night terrors, anxiety, panic attacks and diabetes;

78. Officer Reanau advised Plaintiff that she did not need her medication because she would be back home in a few hours;

79. Olympia Fields Police Officer Poindexter asked Plaintiff Jones if she wanted to take her diabetic medication/insulin and other mental-health medication with her and she said “no” as she appeared to be having a panic attack;

80. Defendant Young walked up and started talking to Officer Poindexter who turned off his body cam as she began telling him about Plaintiff’s medication condition; and when she finished, she told the Officer turn back on his body-cam which was the second time Olympia Fields Police became subjectively aware that Plaintiff faced a substantial risk of serious harm if she did not take her medication;

81. Plaintiff Jones was warned by Officer Poindexter that if she went to the hospital and claimed she was suffering from a mental-health condition, it would just prolong the time she would be away from her son and would cause her to be sent to the Cook County Jail at 26th and California;

82. Plaintiff interpreted that statement to mean if she told hospital personal about her medical condition, she would be sent to Cook County Jail without her medication;

83. Plaintiff Jones was handcuffed by Officer Whitty and paraded toward the Young's house where the squad car was parked;

84. Plaintiff begged the officers not to walk her down the street in front of defendant Young because she was embarrassed and ashamed, but Officer Witt refused to bring the squad car closer;

85. Because Plaintiff’s house is within 1000 feet from the Young’s house, Plaintiff Jones asked Sergeant Baker “How am I supposed to know what a thousand feet from this woman’s home is?” Sergeant Baker became angry, and yelled, “Figure it out,” and slammed the squad car door.

86. The police drove past the Young's house and defendant Young was standing outside waving as they transported Plaintiff to the Olympia Fields Police Department.

**Olympia Fields Police Officers Baker, Whitty and Poindexter Becomes Subjectively Aware of Plaintiff's Risk of Harm During First Unconstitutional Seizure**

87. The Olympia Fields Police again became increasingly and subjectively aware of Plaintiff's medical condition by her behavior and were advised that she was taking medication;

88. Olympia Fields Police Baker advised Plaintiff Jones that they wanted to "speed up the arrest process" because they did not "have enough space" to hold her, nor "enough resources to babysit her overnight" and that they would have to transfer her to Cook County Jail "unless she requested medical assistance for her mental health disability".

89. Officer Whitty asked Plaintiff several times "Do you need to go to the hospital?" and she replied "no" because Officer Poindexter had previously told Plaintiff that she if she went to the hospital, it would lead to being locked up at 26th and California and Plaintiff responded by begging Officers Whitty and Poindexter not to leave her alone in the cell or to leave the door open so she could hear human interaction, but to no avail ;

**Olympia Field's Police Officer Baker Gave Plaintiff Two Options-"Fake It" & Go to Psych Ward and be Released or Go to Cook County Jail and be Released While Officer Poindexter and Whitt Have Subjective Notice that Plaintiff Posed a Danger to Herself While In Custody.**

90. Olympia Fields Police Baker came to Plaintiff while she was locked up in a cell and said he wanted to help her out by giving her two options, 1) to be transferred to Cook County Jail at 26th and California and await her next court date, or 2) "say you want

to hurt yourself" and be committed to St. James Psych Ward and be released from there based on her actions in the police car;

91. Plaintiff was locked up in a cell and explained to Officers Poindexter and Whitty that she would experience panic attacks, night terrors, severe anxiety attacks and border-line psychosis and scream vomiting if she were left alone in the cell;

92. Officer Poindexter and a detective told Plaintiff that they reviewed the footage in the squad car and that she posed a danger to herself and should be transported to the hospital;

93. Officer Baker told Plaintiff that she needed either to claim a mental-health issue so she could go to the hospital or be transferred to Jail at 26th and California.

94. Officer Baker said the Department did not have the resources to "babysit" her. Plaintiff responded, "Okay, I will say whatever you need me to say";

95. The police called for paramedics and when the paramedics arrived, Plaintiff said what Officer Baker told her to say, "I guess I want to hurt myself";

96. As Plaintiff Young was being walked out of the Police Station and handcuffed to a gurney, she saw defendant Young sitting in a white SUV looking at her, so Plaintiff waved at her;

97. The paramedics transported Plaintiff by ambulance to defendant Young's house, parked there for a few minutes and then transported Plaintiff to Franciscan Health;

98. Plaintiff's daughter and several of Plaintiff's neighbors witnessed the ambulance parked outside the Young's house;

**On July 29, 2026 Plaintiff Release from First Unconstitutional Seizure Without Being Charge With A Crime-Without Going Before A Judge and Without Constitutional Due Process Of Law**

99. When Plaintiff arrived at Franciscan Health, Officer Whitty communicated with dispatch that Plaintiff Jones was "no longer being detained" and Plaintiff was not charged with a crime, was not booked or processed, was not taken before a judge and was not afforded a hearing;

100. Plaintiff's treatment as described from Par. 72-99 was set in motion by defendant Jones false and malicious lies and by using her influence with Officers Poindexter, Reneau, Whitty and Baker to arbitrarily, capriciously recklessly and maliciously seize Plaintiff without probable cause and deny Plaintiff the basic constitutional rights afforded any person taken into custody by police;

101. Plaintiff's liberty was returned to her with a constitutional liberty interest in continued liberty and a continued interest in being free from unreasonable seizures without probable cause;

102. When Officer Whitt also relayed to hospital staff that Plaintiff was no longer being detained by the Olympia Fields Police Department, removed the handcuffs from around Plaintiff's hands and left the hospital, Plaintiff could not be seized again for the same set of circumstances without independent and unrelated probable cause;

103. No Complaint was filed with the Cook County State's Attorney on or about July 29, 2026 charging Plaintiff with allegedly violating the July 28th Emergency Order of Protection and no Judge has ever ruled that Plaintiff was in violation of the EOP;

**<u>Olympia Fields Police Officer Whitt Released Plaintiff from Police Custody Without Affording Her Procedural or Substantive Due Process on July 29, 2026</u>**

104. The hospital staff treated Plaintiff Jones as a regular patient, she was placed in a room, connected to monitoring machines and interviewed;

105. Staff asked why Plaintiff was there and Plaintiff explained she made the statement "I want to hurt myself", and then explained that by "hurt" she meant that she would continue living her life unapologetically, and "kill her haters kindness,".

106. The staff laughed and joked, and Plaintiff was discharged from the hospital at approximately 2:00 a.m. on July 30, 2026.

107. Plaintiff liberty interest in being free from unreasonable seizure without probable cause was restored;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendants, David Poindexter, Jacob Reneau, Trushana Whitty and Aaron Baker violated Plaintiff's constitutional rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

## Plaintiff Engaged In First Amended Protected Speech by Filing Complaints Against Olympia Field's Police Chief Derrick Blasingame

108. From July 30, 2026 through August 3, 2026, there were no material changes in circumstances, Plaintiff had no contact with defendant Jones or the Olympia Fields Police Department on July 30th, July 31st, August 1st, August 2nd or August 3rd;

109. After Plaintiff returned home on July 30, 2026, Plaintiff reviewed her available video footage of her police encounters and decided to filed a complaint against Police Chief Derrick Blasingame with her state representative, the Cook County Sheriff's Department, the Village of Olympia Fields, the media and the Olympia Fields Police Chief Beach and Chief Jones *(Plaintiff's emails, complaints and posts are incorporated herein by reference);*

110. Plaintiff also exercised her right to free speech by posting her ordeal on "Nextdoor", stating she was being bullied by her neighbor and Olympia Field's Police and stating that Olympia Fields tax dollars were being used to protect defendant Young's grass and the post went viral;

**Second Unconstitutional Arrest on August 3, 2026-Retaliatory Seizure Of Plaintiff Without Probable Cause By Olympia Fields Police Detectives Potia Simpson, Deputy Chief Bolden Jones and Chief Derrick Blasingame**

111. On Monday, August 3, 2026, Plaintiff went to the Olympia Fields Police Department to seek some FOIA information and to file a complaint against Chief Derrick Blasingame for previously insulting her when she attempted to report the intentional and malicious conduct of defendant Young on June 27, 2026;

112. Chief Derrick Blasingame was aware of Plaintiff's July 30th complaints against him and was very upset.

113. Plaintiff was escorted to an interview room in the back of the police station by Detective Simpson and Sargent Smith and Detective Simpson to discuss her complaints about Chief Derrick Blasingame in detail, which she did;

114. Plaintiff believed they were taking her complaint seriously.

**There Was No Compelling Reason to Arrest Plaintiff Jones and Unconstitutionally Infringe Upon Her Liberty Interest in Continued Liberty Without Due Process in Violation of the First, Fourth and Fourteenth Amendments of the United States Constitution.**

115. Detective Simpson and Sargent Smith left the room and returned with Deputy Chief Jones and told Plaintiff that she was under arrest because the first arrest had not been completed;

116. There was no probable cause to seize Plaintiff, nor penological justification for placing her in custody and no legal justification to infringe upon her protected First Amendment speech and no reason to retaliate against her for complaining about how Chief Blasingame treated her;

117. There had been no material changes in Plaintiff's circumstances, except that she engaged in protective speech on July 30th.

118. There was no compelling reason to arrest Plaintiff other than her engagement in First Amendment protected speech on July 30th.

119. Plaintiff was not afforded an opportunity to respond to the charges;

120. Plaintiff had an immediate panic attack and fell to the floor and began rocking, which is a coping mechanism she uses when facing overwhelming circumstances and Detectives Simpson, Sargent Smith and Deputy Chief Jones were put on subjective notice that Plaintiff had serious medical issues;

**Police Began to Taunt and Physically Assaulting Plaintiff by Poking Her**

121. Detective Simpson told Plaintiff that she was free to leave and that the door was unlocked;

122. Plaintiff replied "Don't lie to me" and Detective Simpson repeated, "The door is open, Theresa, You can go."

123. When Plaintiff got up and walked out the interview room she was apprehended and taken directly to a cell, searched and her belongings were taken;

124. Plaintiff fell to the floor again and curled into a ball under a blanket and began rocking.

125. She heard several officers laughing and saying, "I know you fucking lying. She did what? She doing what? She on the floor?";

126. An officer opened the cell door and began poking Plaintiff;

127. The officer continued poking Plaintiff as though checking whether she was alive;

128. Plaintiff was processed, photograph and fingerprinted and placed back into a cell;

129. Plaintiff asked to make a phone call and Officer Burris said, "We're not your friends, remember? You ain't getting shit.";

**Plaintiff Transported to Franciscan Health Under Guard By Officer Burris**

130. Plaintiff was again transported to Franciscan Health for medication and placed in a yellow room, while Officer Burris sat outside the door;

131. A janitor walked past and asked Officer Burris why Plaintiff Jones was there and Officer Burris said, "Oh yeah, you know she in there faking because she don't want to go to jail.";

**Plaintiff "Pissed Chief B Off" Because of that Email She Wrote**

132. Officer Burris then came into the room, apologized, and attempted to laugh the situation off and said, *"you must have really pissed Chief B off"* because of that email you sent.

133. Because Plaintiff Jones "pissed Chief B off", for engaging in First Amendment protected speech on July 30, 2026 she was seized and arrested without probable cause on August in violation of the

134. Plaintiff Jones asked, "How do you know about that email?" and Officer Burris responded, "That dude is pissed off", "we don't even usually go after people without warrants. We got a guy right now who we've had a warrant for the last two years who shot himself, and we haven't gone after that guy. But yeah, you pissed the chief off."

135. This conversation led Plaintiff to understand that her arrest was related to her complaint against the "Chief B";

136. Officer Burris was later relieved by Officer Waters who sat outside Plaintiff's hospital room door while the hospital nurse ordered Plaintiff's medication and gave it to Officer Waters;

**Plaintiff Transported to Markham Jail By Officer Waters But Sheriff Deputies Refused to Admit Her.**

137. During the night of August 3rd and the early morning of August 4th, at approximately 2:00 am, Officer Waters transported Plaintiff from the hospital to the Markham Courthouse/jail holding area;

138. Officer Waters instructed Plaintiff not mention that she "needed medication" even though he had her medication in his possession;

139. However, when asked by Markham officer if she "was on medication", Plaintiff responded "yes" and Markham Officers refused to take her;

140. Officer Waters returned and said, "What do you think you're doing?" "You told the officer you take medication?" and Plaintiff responded, "Well, I didn't lie."

**Plaintiff Transported back to Olympia Fields Police Department By Officer Waters**

141. Officer Waters became upset and drove Plaintiff back to the Olympia Fields Police Department;

142. Officer Waters wanted Plaintiff to withhold information about her medication because he believed that she would be transported to 26th and California which would relieve him from Plaintiff being in his care;

143. When Plaintiff arrived back at the Olympia Fields Police Department, a large white male officer opened the rear driver's-side door and began yelling at her: “Where's your medication? Where's your medication? Where's your medication?”

144. Plaintiff felt threatened and asked Officer Waters for help and Officer Waters replied, “there is nothing I can do because the man is higher ranked than me and is preparing to retire at the end of the month”.

**Plaintiff Transported to Chicago Heights Police Department by Officer Waters and Officer Whitt and Denied Medication Causing Her to Become a Danger to Herself**

145. Plaintiff Jones was then transported to the Chicago Heights Police Department holding area by Officer Waters who had her medication in his possession and then she was escorted her to a cell by Chicago Heights Police Officers;

146. Plaintiff asked Officer Waters for her medication and he said he gave it to the “staff on duty” and the staff on duty would administer her medication;

147. When Plaintiff asked the staff person on duty for har medication, he said he did not know what she was talking about;

148. Officer Waters intentionally, reckless and maliciously concealed and denied Plaintiff her medication causing her to become extremely paranoid and distressed;

149. As a direct and proximate cause of being denied her medication, Plaintiff attempted suicide by taking her pants off, twisting it into a noose, and hanging herself from the cell door for several minutes before being discovered;

150. A Chicago Heights Police Officer started calling Plaintiff a lunatic and taunting her saying "Yeah, you're certified. You're crazy. You need your medication." in the presence of Officer Whitt;

151. Officer Whitt placed her body cam on the cell bars to record everything;

152. Officer Whitt and Waters transported Plaintiff back to Franciscan Health.

**Plaintiff Transported Back to Franciscan Health by Officer Whitt by Way of Paramedics**

153. Paramedics arrived and transported Plaintiff back to Franciscan Health;

154. Officer Witt sat at the door as staff evaluated her neck for injuries;

155. Sergeant Reneau relieved Officer Witt;

**Plaintiff Transported to the Psychiatric Ward at 26th and California By Olympia Fields Police Officer Reaeau Who Fraudulently Concealed Her Medical Records and Medication Causing Cook County Sheriff Deputies to Turn A Blind Eye**

156. Plaintiff was transported the Psychiatric Ward at 26th and California by Officer Reneau who said "you attempted to hang yourself and will have to stay here for two weeks";

157. However, when Officer Reneau submitted paperwork to the Cook County Sheriff Deputies showing that Plaintiff attempted suicide and medication needs, the Deputy Sheriffs began to laugh and said " It don't work this way" and "we cannot accept her based on the condition of the paperwork";

158. Officer Reneau then intentionally, maliciously and recklessly removed the portion of the medical report stating that Plaintiff had attempted suicide and required medication;

159. Officer Reneau intentionally, maliciously and recklessly resubmitted the fraudulent paperwork to the Sheriff Deputies showing as though Plaintiff was a regular transport and Sheriff Deputies turned a blind eye and admitted her into custody at the Cook County Jail;

160. Plaintiff was intentionally, maliciously and recklessly denied medication, suffered panic attacks, night terror, anxiety attacks and other medical complication that were completely ignored by Cook County Sheriff Deputies;

**Plaintiff Transported to Markham Courthouse, Appeared in Court and Released**

161. On August 5, 2026, Plaintiff was transported to the Markham Courthouse in handcuffed and placed in a chain-gang transport with several other inmates.

162. Plaintiff appeared before a judge and was released on the morning of August 5, 2026.

**On August 18, 2026, Defendant Young's July 28th Emergency Orders of Protections was Dismissed by the Court**

163. On August 18, 2026, defendant Young's July 28th Order of Protection was dismissed because she failed to appear;

164. On September 9, 2026, defendant Young re-filed her EOP and it was also dismissed by the Court on September 28, 2026;

165. The Judge told defendant Young that she would not allow her to refile the emergency order of protection outside extraordinary circumstances like a medical emergency based upon documented proof;

166. As defendant Young existed the courtroom, she looked at Plaintiff Jones and said "I'm calling the police on you again" and was followed out by the courtroom Sheriff Deputy who warned her about her threats;

167. Defendant Young has made several additional attempts to refile the EOP and intentionally, maliciously and recklessly made false misrepresentation in writing to the Circuit Court that she served Plaintiff and she knew the statements and paperwork submitted was false.

168. As a Direct and Proximate Cause of The Cook County Department of Corrections turning a blind eye, Plaintiff was damaged;

169. As a Direct and Proximate cause of defendant Young intentional and malicious infliction of extreme emotional distress, Plaintiff was damaged.

170. Plaintiff request punitive damages against all defendants and an injunctive order against defendant Young to cease and desist from her outrageous conduct,

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

## COUNT I.

## OLYMPIA FIELDS POLICE OFFICERS POINDEXTER, RENEAU, WHITTY AND BAKER VIOLATED 42 U.S.C. §1983

171. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference, specifically paragraphs 72-100;

**a. Qualified Immunity Does Not Apply**

172. It is well settled that government officials like defendant Olympia Fields Police Chief Derrick Blasingame would  protected by qualified immunity "insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

173. However, defendant cannot successfully claim qualified immunity in this case because he violated Plaintiff's clearly established constitutional rights without probable cause under the Fourth, Fifth and Fourteen Amendments of the United States Constitution;

174. Plaintiff was seized without probable cause, allegedly because police said they observed her pass them while they were parked at defendant Young's home and while Plaintiff was on her way to her home which is within 1000 feet  of defendant Young's home  in spite of the fact that Officer Reneau advised her earlier that merely passing Young's home without stopping would not violate the EOP. Par. 65-100;

175. Plaintiff was released from police custody the same night of July 29th without being charged without going before a judge Par. 72-110.

176. Plaintiff was release from the Hospital on July 30, 2026 at approximately 2:00 a.m. Par. 106-109

177. "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

178. The answer to both inquiries in the above paragraph is an unequivocal “yes”, and "Courts may exercise their discretion when choosing which element to address first." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc), Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *12 (2025)

**b. Violation Of Section 1983 While Acting Under Color of Law**

179. Section 1983 allows a plaintiff to sue a "person" who violates his civil rights while acting under color of state law. 42 U.S.C. §1983, Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *5 (2026)

180. Defendants’ were in uniform acting under color of law and their conduct related to their official duties Par. 72-100;

181. "A public employee's acts occur under color of state law when they relate to official duties." Luce v. Town of Campbell, Wis., 872 F.3d 512, 514 (7th Cir. 2017) (citing Gibson v. Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990); Hughes v. Meyer, 880 F.2d 967, 971-72 (7th Cir. 1989))., Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *7 (2026) Par. 72-100;

182. Defendant violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights while acting under color of law relating to his official duties. Par. 72-100;

183. In order to succeed in a § 1983 suit, a plaintiff must establish that a state actor violated her constitutional rights, and that the violation caused the plaintiff injury or damages Par. 72-109;

**Violation of Clearly Established Constitutional Rights**

184. A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007), Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *14 (2025), *See Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010) (holding that to state a claim for an unreasonable seizure a plaintiff must allege that "(1) the officers seized the plaintiff; and (2) the seizure was 'unreasonable'").

185. The manner in which Plaintiff was arrested was egregious and outrageous and no reasonable person would believe the police conduct would not violate clearly established constitutional rights. **Par. 72-109;**

186. Here, Plaintiff was released without charge and no Judge has ever ruled that Plaintiff violated an EOP Par. 72-109:

187. The allegation that Plaintiff drove by police on her way home was a mere pretext to accommodate defendant Young and a mere pretext to unlawfully seize her without probable cause. Par.72-109;

**a. Fourth Amendment Guarantee to be Free from Unreasonable Seizure Is A Clearly Established Constitutional Right**

188. It is well settled that the Fourth Amendment guarantees freedom from unreasonable seizure without probable cause, a clearly established constitutional right of which this high ranking and supervising officer would have known.

189. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated."), Van Dyke v. Ill. Dep't of Children & Family Servs., 2014 U.S. Dist. LEXIS 70222, *13 (2014)

b. **The Right To Procedural Due Process Is A Clearly Established Right**

190. To **state** a § 1983 procedural due process claim a plaintiff 's allegations must demonstrate that she: (1) has a cognizable property or **liberty interest**; (2) has suffered a deprivation of that interest; and (3) was denied due process Par. 72-109;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

**COUNT II**

**OLYMPIA FIELDS POLICE CHIEF DERRICK BLASINGAME VIOLATION OF 42 U.S.C. §1983**

191. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference, specifically paragraphs 102-108, 109-112, 113-122 and 123-131;

**c. Qualified Immunity Does Not Apply**

192. It is well settled that government officials like defendant Olympia Fields Police Chief Derrick Blasingame would  protected by qualified immunity "insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009);

193. However, defendant cannot successfully claim qualified immunity in this case because he violated Plaintiff's clearly established constitutional rights without probable cause and without a penological justification and in retaliation for Plaintiff exercising her constitutional right of free speech;

194. Plaintiff was originally arrested under suspicious circumstances on July 29, 2026 because police said they observed her pass them while sitting at defendant Young's home on her way to her home which is within 1000 feet of each other and despite the fact that police told her earlier that she could pass defendant Young's home but could not stop. Par. 65-73, Par. 74-88.

195. Plaintiff was released from police custody the same night of July 29th without being charged with violating the EOP and without going before a Judge Par. 101-110.

196. Plaintiff was release from the Hospital on July 30, 2026 at approximately 2:00 a.m. Par. 106-109

197. "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

198. The answer to both inquiries in the above paragraph is an unequivocal "yes", and "Courts may exercise their discretion when choosing which element to address first." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc), Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *12 (2025)

**d. Violation Of Section 1983 While Acting Under Color of Law**

199. Section 1983 allows a plaintiff to sue a "person" who violates his civil rights while acting under color of state law. 42 U.S.C. §1983, Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *5 (2026)

200. Defendant's actions were in uniform, at the police station, under color of law and related to their official duties.

201. Plaintiff was re-arrested at the Olympia Fields Police Station without probable cause and without a penological justification only after she voluntarily went there to file a complaint against Chief Derrick Blasingame in his official capacity. **Par. 111-131.**

202. "A public employee's acts occur under color of state law when they relate to official duties." Luce v. Town of Campbell, Wis., 872 F.3d 512, 514 (7th Cir. 2017)

(citing Gibson v. Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990); Hughes v. Meyer, 880 F.2d 967, 971-72 (7th Cir. 1989))., Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *7 (2026) Par, 111-131.

203. Defendant violated Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights while acting under color of law relating to his official duties. Par. 111-131.

204. In order to succeed in a § 1983 suit, a plaintiff must establish that a state actor violated her constitutional rights, and that the violation caused the plaintiff injury or damages Par.

**Violation of Clearly Established Constitutional Rights**

205. A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007), Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *14 (2025), *See Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010) (holding that to state a claim for an unreasonable seizure a plaintiff must allege that "(1) the officers seized the plaintiff; and (2) the seizure was 'unreasonable'").

206. The manner in which Plaintiff was arrested was egregious and outrageous and no reasonable person would believe the police conduct would not violate clearly established constitutional rights. **Par. 113-131**

207. Here, Officer Burris admitted to Plaintiff the reason for her seizure and arrest when he stated you really must have "pissed off Chief B" because of the email she wrote, **Par. 134-138.**

208. The allegation that Police did not finish her earlier arrest was a mere pretext to justify the unlawful seizure without probable cause. Par.113-138

**c. Fourth Amendment Guarantee to be Free from Unreasonable Seizure Is A Clearly Established Constitutional Right**

209. It is well settled that the Fourth Amendment guarantees freedom from unreasonable seizure without probable cause, a clearly established constitutional right of which this high ranking and supervising officer would have known.

210. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated."), Van Dyke v. Ill. Dep't of Children & Family Servs., 2014 U.S. Dist. LEXIS 70222, *13 (2014)

d. **The Right To Procedural Due Process Is A Clearly Established Right**

211. To **state** a § 1983 procedural due process claim a plaintiff 's allegations must demonstrate that she: (1) has a cognizable property or **liberty interest**; (2) has suffered a deprivation of that interest; and (3) was denied due process.

212. Once Plaintiff was released from custody, she had a continued liberty interest to be from unreasonable seizure without probable cause. Par 101-109

**e. The Right To Engage In First Amendment Protected Speech Without Retaliation Is A Clearly Established Right**

213. The First Amendment generally "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." Nieves v. Bartlett, 587 U.S. 391, 398, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). **Par. 111-138**

214. To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, she **must** show she engaged in protected First Amendment activity. Second, she **must** show an adverse action was taken against him. Third, she **must** show her protected conduct was at least a motivating factor of the adverse action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009), Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020)., Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *8 (2026) **Par. 111-131**

215. Plaintiff made verbal and written complaints about Chief Blasingame on July 30, 2026 and her speech was protected First Amendment activity. Par. 111-131

216. As a as result of engaging in protected speech, Chief Blasingame had Plaintiff arrested at the same police station she came to file another complaint against him. Par. 111-138

217. A plaintiff bringing a First Amendment retaliation claim based on an arrest must plead an absence of probable cause. Nieves, 587 U.S. at 402 ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."), Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *9-10 (2026). Par. 134-138

218. Plaintiff's arrest was arbitrary, capricious, and retaliatory and lacked any legally based justification like probable cause. Par. 111-138.

**f. Eighth Amendment Protection from Cruel and Unusual Punishment Is A clearly Established Right**

219. The Eighth Amendment says that ….., nor cruel and unusual punishments inflicted."

220. Chief Blasingame caused Plaintiff to be unreasonably seized without probable cause, without a penological justification and set in motion a series of events that caused Plaintiff to be subjected to cruel and unusual punishments in violation of The Eighth Amendment.

221. On Monday, August 3, 2026, Plaintiff went to the Olympia Fields Police Department to seek some FOIA information and to file a complaint against Chief Derrick Blasingame for previously insulting her when she attempted to report the intentional and malicious conduct of defendant Young on June 27, 2026;

222. Chief Derrick Blasingame was aware of Plaintiff's July 30th complaints against him and was very upset. Par. 134-138

223. Plaintiff was escorted to an interview room in the back of the police station by Detective Simpson and Sargent Smith to discuss her complaints about Chief Derrick Blasingame in detail, which she did;

224. Plaintiff believed they were taking her complaint seriously.

225. Detective Simpson and Sargent Smith left the room and returned with Deputy Chief Jones and told Plaintiff that she was under arrest because the first arrest had not been completed;

226. There was no probable cause to seize Plaintiff, nor penological justification for placing her in custody and no legal justification to infringe upon her protected First Amendment speech and no reason to retaliate against her for complaining about how Chief Blasingame treated her;

227. There had been no material changes in Plaintiff's circumstances, except that she engaged in protective speech on July 30th.

228. There was no compelling reason to arrest Plaintiff other than her engagement in First Amendment protected speech on July 30th.

229. Plaintiff told them that she was on medication and this stressful situation was casing her anxiety;

230. Plaintiff had an immediate panic attack and fell to the floor and began rocking, which is a coping mechanism she uses when facing overwhelming circumstances.

231. Detectives Simpson, Sargent Smith and Deputy Chief Jones were put on subjective notice that Plaintiff had serious medical issues;

**<u>Police Physically Assaulted and Taunted Plaintiff</u>**

232. Detective Simpson told Plaintiff that she was free to leave and that the door was unlocked;

233. Plaintiff replied "Don't lie to me" and Detective Simpson repeated, "The door is open, Theresa, You can go."

234. When Plaintiff got up and walked out the interview room she was apprehended and taken directly to a cell, searched and her belongings were taken;

235. Plaintiff fell to the floor again and curled into a ball under a blanket and began rocking.

236. She heard several officers laughing and saying, "I know you fucking lying. She did what? She doing what? She on the floor?";

237. An officer opened the cell door and began poking Plaintiff;

238. The officer continued poking Plaintiff as though checking whether she was alive;

239. Plaintiff was processed, photograph and fingerprinted and placed back into a cell;

240. Plaintiff asked for her medication and to make a phone call and Officer Burris said, "We're not your friends, remember? You ain't getting shit.";

241. Plaintiff was transferred from jail to jail, humiliated, taunted, denied medication, denied medical treatment, began experiencing PTSD, MST, panic attacks, sever anxiety attacks, scream vomiting, and night terror which lead her to reach border-line psychosis and attempted suicide all while she was an inmate in custody. **Par. 113-189**

242. The plaintiff alleges that the defendants incarcerated her "without a penological justification and subjected her to cruel and unusual punishment."

243. To state an Eighth Amendment claim, the plaintiff must allege facts showing that she was subjected to additional incarceration "without penological justification and that the defendants acted with deliberate indifference." **Par. 111-138**

244. Plaintiff was transferred to various jails, denied her medication, denied medical treatment causing her to suffer PTSD, MST, panic attacks, sever anxiety attacks, night terror, border-line psychosis and scream vomiting leading to attempted suicide **Par. 113-189.**

245. The defendants incarcerated Plaintiff "without a penological justification subjecting her to cruel and unusual punishment" **Par. 113-189.**

246. To state an Eighth Amendment claim, the plaintiff must allege facts showing that she was subjected to additional incarceration "without penological justification and that the defendants acted with deliberate indifference." Par. **113-189**

**g. Supervisor Liability**

247. A defendant may be held liable as a supervisor if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the defendant's wrongful conduct and the violation. **Par. 134-138**

248. Here, Chief Derrick Blasingame was informed that Plaintiff was at the Police Station to file a grievance against him and that she had already talked to Detective Simpson about her grievance, Par. **111-131.**

249. Detective Simpson left the room and came back with Chief Jones to inform Plaintiff that she was under arrest, **Par. 111-131**

250. The requisite causal connection is established here by Plaintiff conversation with Detective Simpson who left the room to inform Chief Blasingame about her complaint which set in motion a series of acts by Detective Simpson and Chief Jones and others, Par. 111-131

251. Here, Chief Blasingame knowingly refused to terminate a series of acts by others, which he as a supervisor, knew or reasonably should have known would cause others to inflict a constitutional injury.

252. Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to

the rights of others., Gonzalez v. Lundy, 2026 U.S. Dist. LEXIS 180555, *1 (2026). **Par. 111-131;**

253. But for the conduct of defendants supervising officers, who put all the events alleged herein into motion, subordinate officers would not have been in the position to harm Plaintiff. Par. 131-147, 151-155**;**

h. Damages

254. As a direct and proximate cause of defendants conduct, Plaintiff was injured by being transferred from jail to jail, humiliated, taunted, denied medication, denied medical treatment, experiencing PTSD, MST, panic attacks, sever anxiety attacks, scream vomiting, and night terror which lead her to reach border-line psychosis and attempted suicide. **Par. 111-189, Par. 131-147, 151-155;**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

**COUNT III.**

**OLYMPIA FIELDS POLICE DETECTIVE PORTIA SIMPSON, POLICE SARGENT MICHAEL SMITH , DEPUTY CHIEF BOLDEN JONES, OFFICERS WATERS AND RENEAU VIOLATIONS OF 42 U.S.C. §1983**

255. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference, specifically paragraphs 111-131 and 134-138.

**e. Qualified Immunity Does Not Apply**

256. It is well settled that government officials like defendants Olympia Fields Police Detective Portia Simpson, Police Sargent Michael Smith Deputy Chief Bolden Jones and Officers Waters and Reneau would be protected by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

257. However, defendants cannot successfully claim qualified immunity in this case because they violated Plaintiff's clearly established constitutional rights without probable cause and without a penological justification and in retaliation as directed by Chief Blasingame for Plaintiff exercising her constitutional right of free speech against Chief Blasingame. Par. 111-131

258. Plaintiff was originally arrested under suspicious circumstances on July 29, 2026 because police said they observed her pass defendant Young's home on her way to her home which is within 100 feet of each other and despite the fact that police told her earlier that she could pass defendant Young's home but could not stop. Par. Par. 65-73, Par. 74-88.

259. Plaintiff was released from police custody the same night of July 29th without being charged with violating the EOP Par. 101-110.

260. Plaintiff was release from the Hospital on July 30, 2026 at approximately 2:00 a.m. Par. 106-109

261. "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 697 (7th Cir. 2023).

262. The answer to both inquiries in the above paragraph is an unequivocal "yes", and "Courts may exercise their discretion when choosing which element to address first." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc), Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *12 (2025)

263. Plaintiff went to the Olympia Fields Police Station and met with Detective Portia Simpson and Police Sargent Michael Smith to file a complaint against Chief Derrick Blasingame.

264. She was taken into an interview room and the defendants listened to her complaints about Chief Derrick Blasingame.

265. Defendants left the room, talked to Chief Blasingame and return to the interview room with Deputy Chief Bolden Jones and informed Plaintiff she was under arrest because they did not finish arresting her the last time she was in custody. Par. 111-13

**f. Violation Of Section 1983 While Acting Under Color of Law**

266. Section 1983 allows a plaintiff to sue a "person" who violates his civil rights while acting under color of state law. 42 U.S.C. §1983, Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *5 (2026)

267. Clearly, defendant's actions were under color of law, related to their official duties and directed by Chief Derrick Blasingame.

268. Plaintiff was re-arrested at the Olympia Fields Police Station without probable cause and without a penological justification only after she voluntarily went there to file a complaint against Chief Derrick Blasingame in his official capacity. **Par. 111-131;**

269. "A public employee's acts occur under color of state law when they relate to official duties." Luce v. Town of Campbell, Wis., 872 F.3d 512, 514 (7th Cir. 2017) (citing Gibson v. Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990); Hughes v. Meyer, 880 F.2d 967, 971-72 (7th Cir. 1989))., Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *7 (2026) Par, 111-131.

270. Defendants violated Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights while acting under color of law relating to their official duties and loyalty to their Chief of Police. Par. 111-131.

271. In order to succeed in a § 1983 suit, a plaintiff must establish that a state actor violated her constitutional rights, and that the violation caused the plaintiff injury or damages.

**Violation of Clearly Established Constitutional Rights**

272. A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007),

Watkins v. Phillips, 2025 U.S. Dist. LEXIS 56190, *14 (2025), *See Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010) (holding that to state a claim for an unreasonable seizure a plaintiff must allege that "(1) the officers seized the plaintiff; and (2) the seizure was 'unreasonable'") Par. 72-100;

273. The manner in which Plaintiff was arrested was egregious and outrageous and no reasonable person would believe the police conduct would not violate clearly established constitutional rights. Par. 72-100, **Par. 111-131, Par.131-147, Par. 151**

274. Here, Officer Burris admitted to Plaintiff the reason for her second seizure and arrest when he stated you really must have "pissed off Chief B" because of the email she wrote, **Par. 134-138.**

275. The allegation that Police did not finish her earlier arrest was a mere pretext to justify the unlawful seizure without probable cause. Par. 72-100, Par.111-138;

**i. Fourth Amendment Guarantee to be Free from Unreasonable Seizure Is A Clearly Established Constitutional Right**

276. It is well settled that the Fourth Amendment guarantees freedom from unreasonable seizure without probable cause, a clearly established constitutional right of which these high ranking and supervising officers would have known Par. 72-100;

277. Defendants turned a blind eye to the law in place of loyalty to their Chief.

278. The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated."), Van Dyke v. Ill. Dep't of Children & Family Servs., 2014 U.S. Dist. LEXIS 70222, *13 (2014)

j. **The Right To Procedural Due Process Is A Clearly Established Right**

279. To state a § 1983 procedural due process claim a plaintiff 's allegations must demonstrate that she: (1) has a cognizable property or **liberty interest**; (2) has suffered a deprivation of that interest; and (3) was denied due process Par. 72-100;

280. Once Plaintiff was released from custody, she had a continued liberty interest to be from unreasonable seizure without probable cause. Par. 72-100, Par 101-109;

281. Plaintiff was not charged or taken before a judge during her first arrest without probable cause, but rather, she was released from custody the same night of her original unlawful arrest Par. 72-100, Par. 101-110;

**k. The Right To Engage In First Amendment Protected Speech Without Retaliation Is A Clearly Established Right**

282. The First Amendment generally "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." Nieves v. Bartlett, 587 U.S. 391, 398, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019) (quoting Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). **Par. 111-138**

283. To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, she must show she engaged in protected First Amendment activity. Second, she must show an adverse action was taken against him. Third, she must show her protected conduct was at least a motivating factor of the adverse action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009), Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020)., Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *8 (2026) Par. 111-138;

284. Plaintiff made verbal and written complaints about Chief Blasingame on July 30, 2026 and her speech was protected First Amendment activity. Par. 37-40, 111-131

285. As a as result of engaging in protected speech, Chief Blasingame had Plaintiff arrested at the same police station she came to file another complaint against him. Par. 111-138

286. A plaintiff bringing a First Amendment retaliation claim based on an arrest must plead an absence of probable cause. Nieves, 587 U.S. at 402 ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."), Edwards v. City of Racine Police Dep't, 2026 U.S. Dist. LEXIS 152706, *9-10 (2026). Par. 134-138

287. Plaintiff's arrest was arbitrary, capricious, and retaliatory and lacked any legally based justification like probable cause or penological justification. Par. 111-138.

**l. Eighth Amendment Protection from Cruel and Unusual Punishment Is A clearly Established Right**

288. The Eighth Amendment says that ….., nor cruel and unusual punishments inflicted.";

289. Olympia Fields Police Detective Portia Simpson, Police Sargent Michael Smith and Deputy Chief Bolden Jones orchestrated and directed Chief Blasingame, caused Plaintiff to be unreasonably seized without probable cause, without a penological justification and they set in motion a series of events that caused Plaintiff to be subjected to cruel and unusual punishment as an inmate and prisoner in violation of The Eighth Amendment. Par. 123-189;

290. Plaintiff had an immediate panic attack and fell to the floor and began rocking, which is a coping mechanism she uses when facing overwhelming circumstances and

Detectives Simpson, Sargent Smith and Deputy Chief Jones were put on subjective notice that Plaintiff had serious medical issues;

**Olympia Fields Police Defendants Portia Simpson, Michael Smith Bolden Jones, Mikasas Waters and Jacob Reaeau Inflicted Cruel and Unusual Punishment By Intentionally, Recklessly and Maliciously Taunting and Assaulting Plaintiff By Repeatedly Poking Her**

291. Detective Simpson maliciously and recklessly taunted Plaintiff by telling her that she was free to leave and that the door was unlocked when he knew that statement was not true;

292. Plaintiff replied "Don't lie to me" and Detective Simpson maliciously repeated, "The door is open, Theresa, You can go."

293. When Plaintiff got up and walked out the interview room she was apprehended and taken directly to a cell, searched and her papers and effects were seized.

294. Plaintiff fell to the floor again and curled into a ball under a blanket and began rocking.

295. She heard Detective Simpson, Sargent Smith, Deputy Chief Jones and several officers laughing and saying, "I know you fucking lying. She did what? She doing what? She on the floor?";

296. An officer opened the cell door and several officers maliciously, recklessly and intentionally began assaulting her by poking Plaintiff;

297. The officer continued intentionally and maliciously and recklessly assault Plaintiff by poking her as though checking whether she was alive;

298. Plaintiff was processed, photograph and fingerprinted and placed back into a cell;

299. When Plaintiff asked to make a phone call and Officer Burris said, "We're not your friends, remember? You ain't getting shit.";

300. Plaintiff was transferred from jail to jail, humiliated, taunted, denied medication, denied medical treatment, began experiencing PTSD, MST, panic attacks, sever anxiety attacks, scream vomiting, and night terror which lead her to reach border-line psychosis and attempted suicide all while she was an inmate in custody. **Par. 113-189**

301. Plaintiff alleges that the defendants incarcerated her "without a penological justification and subjected her to cruel and unusual punishment."

302. To state an Eighth Amendment claim, the plaintiff must allege facts showing that she was subjected to additional incarceration "without penological justification and that the defendants acted with deliberate indifference." **Par. 111-189**

303. Plaintiff was transferred to various jails, denied her medication, denied medical treatment causing her to suffer PTSD, MST, panic attacks, sever anxiety attacks, night terror, border-line psychosis and scream vomiting leading to attempted suicide. **Par. 111-189, Par. 131-147, Par143-147, Par. 151-155**

304. The defendants incarcerated Plaintiff "without a penological justification subjecting her to cruel and unusual punishment." **Par. 111-189**

305. To state an Eighth Amendment claim, the plaintiff must allege facts showing that she was subjected to additional incarceration "without penological justification and that the defendants acted with deliberate indifference." Par. **111-189, Par.313, Par. 131-147, Par. 151-155;**

306. Defendant Waters Intentionally, maliciously and recklessly withheld and conceal Plaintiff's medication from other officers. Par. 131-147;

307. Officer Reneau Intentionally, maliciously and recklessly withheld and conceal Plaintiff's medication from other officers. Par. 151-155;

308. Defendant’s deliberate indifference to a substantial risk of serious harm to Plaintiff as a prisoner violates the cruel and unusual punishment clause of the Federal Constitution's Eighth Amendment because he was subjectively aware that Plaintiff Jones as a prisoner faced such a risk and disregarded that risk by failing to take reasonable measures to abate the risk;

309. Deliberate indifference is equivalent to reckless disregard and describes a state of mind more blameworthy than negligence, but is something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result;

310. Subjective recklessness, as defined in the criminal law, is the appropriate test deliberate indifference and the failure of The Olympia Fields Police and The Cook County Department of Corrections officials to alleviate a significant risk;

**m. Damages**

311. As a direct and proximate cause of defendants conduct, Plaintiff was injured by being transferred from jail to jail, humiliated, taunted, denied medication, denied medical treatment, experiencing PTSD, MST, panic attacks, sever anxiety attacks, scream vomiting, and night terror which lead her to reach border-line psychosis and attempted suicide. **Par. 111-189, Par. 131, Par. 131-147; Par. 151-155;**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant’s intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

COUNT IV

**INTENTIONAL INFLICTION OF EXTREME EMOTIONAL DISTRESS BY DETECTIVE PORTIA SIMPSON, POLICE SERGEANT MICHAEL SMITH, DEPUTY CHIEF BOLDEN JONES, POLICE CHIEF DERRICK BLASINGAME AND OFFICERS MIKASAS WATERS, JACOB RENEAU, DAVID POINDEXTER, TRUSHANA WHITTY AND AARON BAKER**

312. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

313. To state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that her conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress.

314. Plaintiff was intentionally, recklessly and maliciously seized by Officers Poindexter, Reneau, Whitty and Baker without probable cause and denied due process of law in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution in violation of Section 1983 Par. 56-58, 72-100;

315. On Monday, August 3, 2026, Plaintiff went to the Olympia Fields Police Department to seek some FOIA information and to file a second complaint against Chief Derrick Blasingame for previously insulting her when she attempted to report the intentional and malicious conduct of defendant Young on June 27, 2026;

316. Chief Derrick Blasingame was aware of Plaintiff's July 30th complaints against him and was very upset and recklessly, maliciously, outrageously, in extreme

disregard for Plaintiff's constitutional rights, had her arrested without probable cause or any penological justification Par. 134-138;

317. The conduct of Officers Simpson, Smith, Jones, Waters, Reneau, Poindexter, Whitty and Baker were reckless, malicious, outrageous, and committed in extreme disregard for Plaintiff's constitutional rights. Par. 72-100, 131-147, Par. 151-155;

318. Plaintiff was escorted to an interview room in the back of the police station by Detective Simpson and Officer Smith to discuss her complaints about Chief Derrick Blasingame in detail, which she did;

319. Plaintiff believed they were taking her complaint seriously.

320. Detective Simpson and Officer Smith left the room and returned with Deputy Chief Jones and intentionally, maliciously, and recklessly with malice seized Plaintiff without probable cause, conduct that was extreme and outrageous;

321. There was no probable cause to seize Plaintiff, nor penological justification for placing her in custody and no legal justification to infringe upon her protected First Amendment speech and no reason to retaliate against her for complaining about how Chief Blasingame treated her. Par. 72-100, Par. 104-164, Par. 131-147, Par. 151-155;

322. There had been no material changes in Plaintiff's circumstances to justify her treatment except that she engaged in protective speech on July 30th. Par. 104-164, Par. 131-147, Par. 151-155;

323. There was no compelling reason to arrest and treat Plaintiff in the manner she was treated other than to violate her constitutional rights and engagement in First Amendment protected speech on July 30th. Par. 72-100, Par. 104-164, Par. 131-147, Par. 151-155;

324. In each situation alleged in this complaint, each and every defendant either intended to inflict severe emotional distress or knew that there was a high probability that her conduct would do so; Par. 56-58, 76-82, 87-89, 9—98, Par. 72-100, 104-164, Par. 131-147, Par. 151-155;

325. Plaintiff had an immediate panic attack and fell to the floor and began rocking, which is a coping mechanism she uses when facing overwhelming circumstances and Detectives Simpson, Sargent Smith and Deputy Chief Jones were put on subjective notice that Plaintiff had serious medical issues;

**Police Began to Intentionally, Recklessly and Maliciously Taunted and Assaulted Plaintiff By Repeatedly Poking Her**

326. Detective Simpson maliciously and recklessly taunted Plaintiff by telling her that she was free to leave and that the door was unlocked when he knew that statement was not true;

327. Plaintiff replied "Don't lie to me" and Detective Simpson maliciously repeated, "The door is open, Theresa, You can go."

328. When Plaintiff got up and walked out the interview room she was apprehended and taken directly to a cell, searched and her papers and effects were seized.

329. Plaintiff fell to the floor again and curled into a ball under a blanket and began rocking.

330. She heard Detective Simpson, Sargent Smith, Deputy Chief Jones and several officers laughing and saying, "I know you fucking lying. She did what? She doing what? She on the floor?";

331. An officer opened the cell door and several officers maliciously, recklessly and intentionally began assaulting her by poking Plaintiff;

332. The officer continued intentionally and maliciously and recklessly assault Plaintiff by poking her as though checking whether she was alive;

333. Plaintiff was processed, photograph and fingerprinted and placed back into a cell;

334. When Plaintiff asked to make a phone call and Officer Burris said, “We’re not your friends, remember? You ain’t getting shit.”;

335. Defendant’s conduct caused Plaintiff extreme emotional distress and all the knowledge accumulated to one officer was imputed to the other officer;

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant’s intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

COUNT V

**FRAUDULENT CONCEALMENT OLMPIA FIELDS POLICE OFFICERS WATERS AND RENEAU**

336. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

337. To state a claim for fraudulent concealment, a plaintiff must allege the following elements: (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3)

the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. As with other claims sounding in fraud, the information at issue must be material and must relate to an existing or past state of affairs Abazari v. Rosalind Franklin Univ. of Med. & Sci., 2015 IL App (2d) 140952, P1 (2015).

**Defendant Concealed A Material Fact Regarding Plaintiff's Medical Condition and Medication Under Circumstances That Created A Duty To Speak**

338. During the night of August 3rd and the early morning of August 4th, at approximately 2:00 am, Officer Waters transported Plaintiff from the hospital to the Markham Courthouse/jail holding area; Par. 50-67, Par. 131-147

339. Officer Waters instructed Plaintiff not mention that she "needed medication";

340. However, when asked by another officer if she took medication, Plaintiff responded yes and Markham Officers refused to take her. Par. 131-147;

341. Officer Waters returned and said, "What do you think you're doing?" "You told the officer you take medication?" and Plaintiff responded, "Well, I didn't lie." Par. 131-147

**Plaintiff Transported back to Olympia Fields Police Department By Officer Waters**

342. Officer Waters became upset and drove Plaintiff back to the Olympia Fields Police Department;

343. Officer Waters wanted Plaintiff to withhold information about her medication because he believed that she would be transported to 26th and California which would relieve him from Plaintiff being in his care;

**Plaintiff Transported to Chicago Heights Police Department by Officer Waters and Officer Whitt**

344. Plaintiff Jones was then transported to the Chicago Heights Police Department holding area by Officer Waters and Officer Whitt and then she was escorted her to a cell by Chicago Heights Police Officers. Par. 131-147

345. Plaintiff asked Officer Waters for her medication and he said that he gave it to the staff on duty who would administer her medication. Par. 131-147;

346. When Plaintiff asked the staff person on duty for her medication, he said he did not know what she was talking about. Par. 131-147

347. Defendant Waters and Whitt concealed from the Chicago Heights Police that Plaintiff was on medication, a material fact under circumstances that created a duty to speak. Par. 131-147;

348. Defendants Waters and Whitt intended to induce a false belief in Chicago Heights Police that Plaintiff did not take medication. Par. 131-147;

349. The plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist. Par. 131-147

350. The concealed information was such that the plaintiff would have acted differently had she been aware of it. Par. 131-147, Par.151-155;

351. The Plaintiff's reliance to her detriment on the representation by Officer Waters and Whitt resulted in damages. Par. 131-147;

352. Plaintiff was intentionally, recklessly, and maliciously denied medication causing her to become extremely paranoid and distressed;

353. As a direct and proximate cause of being denied her medication, Plaintiff attempted suicide by taking her pants off, twisting it into a noose, and hanging herself from the cell door for several minutes before being discovered. Par. 131-147

354. A Chicago Heights Police Officer started calling Plaintiff a lunatic and taunting her saying "Yeah, you're certified. You're crazy. You need some medication." in the presence of Officer Whitt;

355. Officer Whitt placed her body cam on the cell bars to record everything;

356. Officer Waters and Officer Whitt by way of Paramedics transported Plaintiff back to Franciscan Health.

357. Officer Witt sat at the door as staff evaluated Plaintiff's neck for injuries resulting from the suicide attempt;

358. Sergeant Reneau relieved Officer Waters;

**Officer Reneau Transported Plaintiff to the Cook County Department of Corrections At 26th and California**

359. Plaintiff was transported to the Department of Corrections at 26th and California by Officer Reneau who said "you attempted to hang yourself and will have to stay here at the Psychiatric Ward for two weeks" Par. 151-155;

360. When Officer Reneau submitted paperwork to the Cook County Sheriff Deputies showing that Plaintiff attempted suicide and was medication needs, the Deputy

Sheriffs began to laugh and said " It don't work this way" and "we cannot accept her based on the condition of the paperwork". Par. 151-155;

361. Defendant Reneau intentionally, recklessly and maliciously concealed the subjectively known fact that Plaintiff attempted suicide, a material fact under circumstances that created a duty to disclose; Par. 151-155

362. Defendant Reneau intended to induce a false belief among the Cook County Department of Corrections that Plaintiff had no medical issues. Par. 151-155;

363. The plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist.

364. Officer Reneau then intentionally, recklessly and maliciously removed the portion of the medical report stating that Plaintiff had attempted suicide and required medication;

365. Officer Reneau resubmitted the partial paperwork to the Sheriff Deputies showing Plaintiff was a regular transport who did not need medication and Sheriff Deputies turned a blind eye and admitted her into custody at the Cook County Jail;

366. The concealed information was such that the Plaintiff would have acted differently had she been aware of it;

367. The Plaintiff's reliance that Officer Reneau would make the proper disclosures resulted in damages. Par. 151-155;

368. Plaintiff was denied medication, suffered panic attacks, night terror, anxiety attacks and other medical complication that were completely ignored by Cook County Sheriff Deputies. Par. 151-155

369. The Olympia Fields Police owed Plaintiff Jones a duty to provide for her safety as a prisoner;

370. The Olympia Fields Police breached his to Plaintiff to provide for her safety;

371. The conduct of the Olympia Fields Police constitute fraudulent concealment;

372. By denying Plaintiff her medication, The Olympia Fields Police subjected Plaintiff to inhumane conditions of confinement;

373. As a Direct and Proximate cause of defendant's misconduct, Plaintiff was damaged;

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant has violated rights as alleged in the complaint

(b) Enjoin Defendants from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

COUNT VI

**INTENTIONAL INFLICTION OF EXTREME EMOTIONAL DISDRESS BY DEFENDANT TANJA YOUNG**

374. The allegations of the foregoing paragraphs are hereby re-alleged and incorporated herein by reference.

375. To state a cause of action for intentional infliction of emotional distress, a plaintiff must adequately allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that her conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress.

376. Plaintiff Theresa Jones has limited contact with defendant Young, they spoke once in 2021 when the Young's came to Plaintiff's home to solicit her vote for the HOA Board election Par. Par. 10-12

377. They spoke once in 2026 when Mr. Young came to Plaintiff's home to report Plaintiff's son riding his bike in the streets near their home Par. 10-12;

378. When Mr. Young came to Plaintiff Jones home on that day, he made unwelcomed and unwanted sexual advancements toward her, but she never told anyone except her close friends and family;

379. The second and only other conversation Plaintiff Jones had contact with defendant Young was after Mr. Jones visited her home, but they only discussed neighborhood issues;

380. However, in July of 2026 and continuing through August and September 2026, defendant Young intentionally, maliciously, recklessly and in wanton disregard for the truth, set off a chain of extreme and outrageous events that caused Plaintiff

severe emotional distress **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

381. Defendant Young either intended to inflict severe emotional distress or knew that by filing false 911 complaint, obtaining a false EOP and alleging that Plaintiff violated the EOP created a high probability that her conduct would inflict severe emotional distress, **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

382. Defendant Young intentionally, maliciously and recklessly set off a chain of events that she knew would cause Plaintiff extreme emotional distress, **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

383. This false police report caused the Olympia Fields Police to make contact with Plaintiff, Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 156-165;

384. Defendant Young intentional, malicious and reckless false statements to obtain an EOP caused Plaintiff extreme emotional distress, **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

385. Defendant recklessly and maliciously caused the Olympia Fields Police to harass Plaintiff, arrest Plaintiff without probable cause, violate her constitutional rights to be free speech and subject her to unreasonable cruel and unusual punishment. **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

386. As a Direct and Proximate cause of defendant's misconduct, Plaintiff was damaged and suffered extreme emotional distress; **Par. 7-9, 11-16, 18-35, 36-43, 44-45, 46-50; Par. 3-6,8,13-16, 14-16, 18-22, 41-43, 44-47, 64,86 and Par. 100;**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Jones prays that this Court:

(a) Grant judgment in favor of her and declare that each named Defendant Tanja Young for Intentional Infliction of Extreme Emotional Distress as alleged in the complaint

(b) Enjoin Defendant from retaliating against Plaintiff;

(c) Award Plaintiff compensatory damages, including damages for pain and suffering, for injuries suffered as a result of Defendant's intentional, outrageous, and reckless conduct in an amount not less than Ten Million Dollars $10,000,000;

(d) Award Plaintiff punitive damages in an amount not less than Ten Million Dollars $10,000,000

(e) Order such other appropriate relief as the interests of justice require.

Dated This 9th Day October 2026

DAVID E. NEELY & ASSOCIATES
/DEN/
David E. Neely, Esq., JD, Ph.D. (#6182361)
Attorneys for the Plaintiff
5619 S. Wabash Ave.
Chicago, IL. 60637
Tel:: 312-315-8241
Email: deneely1@gmail.com